**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**MICHAEL JONES, Individually and as
personal representative of the wrongful death
beneficiaries of Roosevelt Lee Peavy, Deceased**            **PLAINTIFF**

**V.**            **CIVIL ACTION NO. 2:10-CV-94-KS-MTP**

**MARION COUNTY, MISSISSIPPI, et al.**            **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This case involves Section 1983 claims for alleged constitutional violations stemming from the suicide of a man detained prior to a commitment hearing. The Court provided an extensive account of this matter's factual background in a previous opinion. *See Jones v. Marion County, Miss.*, No. 2:10-CV-94-KS-MTP, 2011 U.S. Dist. LEXIS 41951, at *2-*15 (S.D. Miss. Apr. 12, 2011). The Court now considers Defendants' Motion for Summary Judgment [58]. For the reasons stated below, the motion is **granted**.

### I. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there

1

is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## II. CONCEDED CLAIMS

### A.    *The Individual Defendants*

Plaintiff conceded that the claims as to the individual defendants in their official capacity are, in essence, claims as to Marion County. *See Brumfield v. Hollins*, 551 F.3d 322, 331 n. 9 (5th Cir. 2008). Accordingly, the Court grants Defendants' Motion for Summary Judgment as to any claims against the individual Defendants in their official capacity separate from Plaintiff's claims against Marion County.

### B.    *Punitive Damages*

Plaintiff conceded that he is unable to recover punitive damages in this matter. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's punitive damages claim.

C.  *Eighth Amendment*

Plaintiff conceded that Defendants are entitled to summary judgment as to Plaintiff's Section 1983 claims stemming from alleged violations of the Eighth Amendment. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to any such claims.

D.  *State Law Claims*

Plaintiff conceded that any state law claims would be barred by the Mississippi Tort Claims Act, but Plaintiff asserts that he did not bring any state law claims in this matter. Nonetheless, to the extent Plaintiff pleads any state law claims, the Court grants Defendant's Motion for Summary Judgment as to them.

### III. FOURTEENTH AMENDMENT CLAIMS

"To state a section 1983 claim, a plaintiff must (1) allege violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (punctuation omitted). The Fifth Circuit Court of Appeals has observed:

> Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eighth Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs. A pretrial detainee's due process rights are at least as great as the Eighth Amendment protections available to a convicted prisoner. . . . [T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement.

*Jacobs v. W. Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 (5th Cir. 2000) (citations and punctuation omitted). Accordingly, "[t]he failure to provide pre-trial detainees with adequate protection from their known suicidal impulses is actionable under § 1983 as a violation of the detainee's

constitutional rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 391 (5th Cir. 1992). This Court has previously held that one held prior to a civil commitment hearing enjoys at least the same constitutional protections as one held prior to a criminal trial. *Anderson v. Perkins*, 532 F. Supp. 2d 837, 842 (S.D. Miss. 2007); *see also Boston v. Lafayette Cnty., Miss.*, 743 F. Supp. 462, 473-74 (N.D. Miss. 1990). Therefore, "persons detained awaiting civil commitment due to mental illness" have a clearly established constitutional right to be protected from their known suicidal impulses. *Anderson*, 532 F. Supp. 2d at 842.

In the course of briefing the issues related to Defendants' Motion for Summary Judgment, Plaintiff refined his claims to three core issues. First, Plaintiff argues that the Marion Walthall Correctional Facility's ("MWCF's") observation policy constitutes deliberate indifference to the known danger that an inmate will commit suicide. Second, Plaintiff argues that MWCF's failure to observe a policy of providing professional mental health evaluation for suicidal inmates constituted deliberate indifference to the known danger that an inmate will commit suicide. Finally, Plaintiff argues that MWCF's restraint policy constitutes deliberate indifference to the known danger that an inmate may commit suicide. Plaintiff did not address any other issues in his Response to Defendants' Motion for Summary Judgment. Therefore, the Court assumes that Plaintiff concedes any other Fourteenth Amendment issues outside those listed above.

"Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). "A 'condition of confinement' case is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial commitment." *Flores v. City of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997). However, "if the complained-of

harm is a particular act or omission of one or more officials, the action is characterized as an 'episodic act or omission' case." *Id.* In such cases, "an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* The parties' briefing suggests that they agree that this case falls within the episodic-acts-or-omissions category. Accordingly, the Court shall treat it as such.[1]

> The Fifth Circuit has described the analysis applied to episodic acts cases:
>
> Municipal liability under § 1983 may not be predicated on respondeat superior. Rather, the plaintiff must demonstrate: (1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference. To demonstrate deliberate indifference under the first prong, the plaintiff must show that the municipal employee knew of and disregarded an excessive risk to the detainee's health or safety. Under the second prong, the plaintiff must identify a policymaker and show that an official policy is the moving force behind the municipal employee's allegedly unconstitutional act. The objective deliberate indifference standard considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the pretrial detainee's rights.

*Brumfield*, 551 F.3d at 331 (punctuation and internal citations omitted); *see also Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997). Therefore, in episodic acts cases, a detainee must first establish that the specific actions underlying his claim were constitutional violations, which requires him to demonstrate subjective

---

[1]The Court notes that Plaintiff's Amended Complaint may – if liberally construed – encompass both theories. However, the parties briefed the case as if it were an episodic acts case, and the Court shall address the case within the rubric of the parties' briefs, rather than shoehorn their arguments into a different analysis.

deliberate indifference on the part of the municipal or county employees involved. *Scott*, 114 F.3d at 54. Then, to subject the municipality or county to liability, the plaintiff must also establish that the violation resulted from a policy or custom adopted or maintained with objective deliberate indifference. *Id.*

The Court already conducted a qualified immunity analysis in this case. *Jones*, 2011 U.S. Dist. LEXIS 41951 at *18-*47. The qualified immunity analysis entails two determinations, addressed in whatever order the Court chooses: 1) whether the plaintiff has demonstrated a violation of a constitutional right, and 2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231-36, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). Prison or jail officials violate a detainee's rights under the Due Process Clause of the Fourteenth Amendment when they possess "actual knowledge of the substantial risk of suicide and respond[] with deliberate indifference." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

"Deliberate indifference is more than mere negligence or even gross negligence." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010). "Deliberate indifference, as defined in due process cases, requires both that the government official have subjective knowledge of a substantial risk of serious harm to a pretrial detainee and that the government official respond with deliberate indifference to that risk." *United States v. Gonzalez*, 436 F.3d 560, 573 (5th Cir. 2006) (punctuation omitted). The Court thoroughly examined the actions and omissions of each individual Defendant and found that none of them rose to the level of deliberate indifference. *Jones*, 2011 U.S. Dist. LEXIS 41951 at *25-*49. As none of the individual defendants' behavior rose to the level of deliberate indifference, none of them violated Roosevelt Peavy's constitutional rights. *Hare*, 74 F.3d

at 650. Accordingly, the Court held that the individual Defendants were entitled to qualified immunity. *Jones*, 2011 U.S. Dist. LEXIS 41951 at \*48-\*49.

The Court now faces the same issue: to impose liability on Marion County under Section 1983, the Plaintiff must first demonstrate that Marion County's employees acted with deliberate indifference to Peavy's constitutional rights. *Brumfield*, 551 F.3d at 331; *Olabisiomotosho*, 185 F.3d at 526; *Scott*, 114 F.3d at 54. Plaintiff presented evidence not previously considered by the Court: the transcript of a deposition of Major Derrick Mingo as the Rule 30(b)(6) representative of Marion County, the final expert report of Dr. Charles Lindquist, the transcript of a deposition of Dr. Charles Lindquist, and a video[2] of Peavy's final suicide attempt. After thoroughly examining these materials, the Court concludes that Plaintiff has not presented anything to alter its earlier decision that none of the Marion County employees implicated in this matter acted with deliberate indifference to Peavy's constitutional rights.

Overall, the new evidence presented by Plaintiff largely concerns the policies and practices of Marion County, rather than the specific actions of Marion County employees. Lindquist's report focuses exclusively on MWCF's policies and training practices, and his deposition testimony actually bolsters Defendants' argument. Lindquist admitted on more than one occasion that the individual Defendants "made efforts," but he described their efforts as merely "inadequate." Indeed, the Court previously noted that Defendants' "effort indicate[d] not apathy, but concern." *Jones*, 2011 U.S. Dist. LEXIS 41951 at \*26 (quoting *Rhyne*, 973 F.2d at 392). Likewise, Lindquist's testimony

---

[2]Plaintiff conventionally filed a compact disc which purportedly contained a digital copy of the video. However, the disc filed with the Court was blank. Plaintiff's counsel electronically transferred a copy of the video file to the undersigned's chambers. To ensure that the record is complete, the Court shall attach physical media which contains a digital copy of the video as an exhibit to this opinion and order, to be placed on file in the Clerk's office.

7

does not allow the conclusion that the individual Defendants were deliberately indifferent to Peavy's needs. Rather, the difference between Lindquist's opinions and what the individual Defendants actually did was "one of degree." *Id.* at *48 (quoting *Rhyne*, 973 F.2d at 393).

Mingo's 30(b)(6) deposition also focuses heavily on MWCF policies and procedures, rather than the actions of the individual Defendants. However, one point of his testimony – in combination with the video of Peavy's final, successful suicide attempt – merits discussion. Mingo testified that it should take a person five to ten seconds, on average, to get from the closed-circuit monitoring tower to the isolation cell where Peavy was being held. The video shows that Peavy ran head-first into his cell door four times before guards entered to restrain him. Over a minute passed between the first strike and the guards' entry – a considerably longer period of time than five to ten seconds. Standing alone, this disparity is troubling. However, Mingo also testified that there were three doors – including the cell door – between the observation room and Peavy. Three officers left the observation room and went to the cell: Sergeant Cochran, Deputy Rester, and OIC Kemp (who is not a party to this action). Both Rester and Cochran testified that they immediately proceeded to the isolation cell after Rester observed Peavy run into the cell door the first time. Cochran testified that it took them approximately thirty seconds to reach the cell.

Based on the evidence currently in the record, the Court concludes that the disparity between the time it took the guards to reach Peavy and Mingo's estimate is not sufficient to allow an inference of deliberate indifference. First, Mingo's estimate is nothing more than an *estimate*. Indeed, its accuracy is called into question by his additional testimony that there were three doors between the responding guards and Peavy, and Cochran's testimony that it took them thirty seconds to reach the cell. Furthermore, Cochran and Rester both testified that they immediately responded

8

to Peavy's actions, and the video shows that it took them over a minute to reach him. The Court concludes that the disparity, when considered along with the other record evidence, is not sufficient to show that Cochran and Rester responded to Peavy's final suicide attempt with deliberate indifference. At worst, the facts suggest negligence.

As Plaintiff has not shown that any of the individual Defendants acted with deliberate indifference, he has not shown that they violated Peavy's constitutional rights. *Hare*, 74 F.3d at 650; *Gonzalez*, 436 F.3d at 573. Furthermore, as Plaintiff has not shown that any of Marion County's employees violated Peavy's constitutional rights, it is not necessary for the Court to proceed to the second phase of the municipal liability analysis and examine the policies or customs of Marion County from which its employees' actions derived. *Brumfield*, 551 F.3d at 331; *Olabisiomotosho*, 185 F.3d at 526; *Scott*, 114 F.3d at 54. Therefore, the Court grants Defendants' Motion for Summary Judgment [58].

### IV. CONCLUSION

In the Court's experience, there are no satisfactory resolutions to matters like the present one. Nothing that this Court does will undo the tragic events which spawned this case. Regardless, the Court must faithfully apply the law of the Fifth Circuit. For this Court to impose liability on Marion County, Plaintiff must demonstrate that one or more of Marion County's employees acted with deliberate indifference to the constitutional rights of Roosevelt Peavy. Plaintiff has not done so. As the Court noted in its previous opinion, the facts are sufficient to show negligence or even gross negligence – but not deliberate indifference.

The brutal manner in which Peavy took his own life contributes to this conclusion. *See Sibley v. Lemaire*, 184 F.3d 481, 489-90 (5th Cir. 1999) (where a prisoner plucked his own eyeballs out,

the court considered the "highly unusual and unpredictable" nature of his actions when determining whether officials were deliberately indifferent). He was clearly determined to succeed in his efforts to take his own life, but his success does not necessarily lead to the conclusion that there was a constitutional violation. The evidence shows that each individual Defendant acted as he thought appropriate at his particular time and place. It is clear now that those actions were insufficient. However, the Court is not permitted to allow hindsight to color its analysis.

For all the reasons stated above, the Court **grants** Defendants' Motion for Summary Judgment. .

SO ORDERED AND ADJUDGED this 11th day of October, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE